The STATE of Ohio, Appellee,

v.

GRAVELY, Appellant.

[Cite as *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 09AP–440 and 09AP–441.

Decided July 20, 2010.

Ron O'Brien, Franklin County Prosecuting Attorney, and John H. Cousins IV, Assistant Prosecuting Attorney, for appellee.

Brian J. Rigg, for appellant.

KLATT, Judge.

{¶ 1} Defendant-appellant, Michael T. Gravely, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.

{¶ 2} On April 28, 2008, Officer Ronald Branham of the Columbus Police Department Narcotics Bureau Intac Unit [1] sent a confidential informant to make

---

1. The Intac Unit investigates complaints of drug activity and executes search warrants of homes engaged in drug activity.

a controlled buy of drugs at a house located on East Rich Street in Columbus, Ohio. The police had received a number of complaints that drugs were being sold from this house. The informant went to the rear door of the house and purchased crack cocaine from a man inside the house. As a result of the buy, Officer Branham obtained a search warrant ("the first search warrant") to find evidence of drugs in the house. Specifically, the warrant sought to search:

1781 E. RICH STREET (Two story white sided and brown brick house, buy came from 1st floor rear door; 2nd house east of the 1st alley east of Fairwood Avenue on the south side of E. Rich Street)

{¶ 3} On the evening of April 30, 2008, officers of the Intac Unit attempted to execute the first search warrant. They approached the rear door of the house, where the drug buy had occurred, in a single-file line. Officer John Kifer's role that night was to provide armed cover for the other officers, who would attempt to gain entrance to the house. He stood to the side of the back porch to allow the next officer, Anthony Garrison, to get to the door. Garrison's role was to breach the back door. Garrison first attempted to open the door, but it was locked. He then knocked on the door and announced that the police were there to serve a search warrant. Garrison heard people scurrying inside the house, so he hit the door with his battering ram to break down the door. The door did not move.

{¶ 4} After Garrison hit the door, Kifer heard and saw gunshots coming though the door. Garrison was shot in the hip but continued to hit the door with his battering ram until he was shot a second time, this time in the arm. Garrison dropped the battering ram and left the porch. Kifer returned fire to provide cover for Garrison. Officer John Gillis, who had been standing to the side of the door, picked up the battering ram and hit the door. The door still would not open. Shots were again fired from inside the house. One shot hit Gillis in the leg. He fell down and rolled off the porch. Kifer and another officer returned fire to provide cover for Gillis.

{¶ 5} The injured officers left the scene to receive medical treatment, and the remaining officers found cover in the house's backyard. The officers ordered the people inside the house to come out. Shortly thereafter, several people exited the house through the rear door. Officer Kevin Tilson, who was performing containment of the scene, saw a person trying to leave the house through a basement window. That person, later identified as Derrick Foster, crawled out of the window and told Tilson that he had a gun. Tilson took the gun, threw it on the ground, and placed Foster under arrest.

{¶ 6} Other officers entered the first floor of the house to secure it and to search for suspects or any injured people. Once the house was secured, Detective James McCoskey, who was called to the scene after the shooting,

obtained a search warrant ("the second search warrant") to search for evidence of felonious assault in the house. The warrant sought to search:

1781 E. Rich street, a light colored, vinyl siding covered two-story house located on the south side of the street facing north and curtilage

{¶ 7} Shortly thereafter, Columbus Police Crime Scene Search Unit officers arrived at the house. Outside the house, the officers found a Smith & Wesson Model SW .40F handgun that contained six .40 caliber rounds. Inside the house, the officers recovered two more guns: a Glock Smith & Wesson .40 caliber found inside the home's furnace, and a Springfield Armor USA XP .45 found in the home's basement. The Springfield Armor .45 was a two-tone gun, green on the bottom and black on the top. The officers also found a number of spent bullet casings inside the house. Specifically, they found two .40 casings and five .45 casings inside the house.

{¶ 8} Columbus Police Officer Detective William Gillette, the lead detective in this investigation, arrived at the scene later that morning and entered the house. As he walked through the house, he discovered steps leading up to a second-floor apartment. He and another officer knocked on the door of that apartment and told the people inside to come out. No one responded. Police later learned from Foster that people could still be inside that second-floor apartment. Based on that information, Detective McCoskey obtained another search warrant ("the third search warrant") to search for those individuals. The warrant sought to search:

1779 E. Rich street, Columbus, Ohio, located on the second floor of a two-story, light colored, vinyl sided house, setting on the south side of the street facing north and curtilage

{¶ 9} Shortly thereafter, the Columbus Police Department's SWAT team entered the house's second-floor apartment. They found two people in the apartment: appellant and another man.

{¶ 10} After discovering that the second-floor apartment had a separate address from the first-floor apartment, Branham obtained another search warrant ("the fourth search warrant") to search for evidence of drugs in the second-floor apartment. The warrant sought to search:

1781 EAST RICH STREET (Two story, white sided and brown brick house. Second house east of the first alley east of Fairwood Avenue on the south side of East Rich Street. Target is second floor only.)

Pursuant to the fourth search warrant, officers from the Crime Scene Search Unit entered the second-floor apartment and found drugs and drug paraphernalia.

{¶ 11} As a result of these events, on May 29, 2008, a Franklin County Grand Jury indicted appellant in case No. 08CR05–3601 with two counts of felonious assault in violation of R.C. 2903.11 with firearm specifications, one count of having a weapon while under disability in violation of R.C. 2923.13, one count of possession of cocaine in violation of R.C. 2925.11, and one count of trafficking in cocaine in violation of R.C. 2925.03. Appellant entered a not-guilty plea to those charges.

{¶ 12} On January 14, 2009, another Franklin County Grand Jury indicted appellant in case No. 09CR01–275 with one count of possession of cocaine in violation of R.C. 2925.11, another count of possession of cocaine that included a major-drug-offender specification pursuant to R.C. 2941.1410, one count of possession of heroin in violation of R.C. 2925.11, and one count of having a weapon while under disability in violation of R.C. 2923.13. Appellant again entered a not-guilty plea to the charges and proceeded to trial.

{¶ 13} Before trial, appellant sought to suppress the evidence police obtained from their searches of 1779 and 1781 East Rich Street. Appellant argued that the evidence should be suppressed because the first three search warrants listed an incorrect address for the portion of the house searched. Specifically, the house contained two units with different addresses: 1779 East Rich Street is the address for the downstairs unit, and 1781 East Rich Street is the address for the upstairs unit. However, the only street address visible from the front of the house was 1781. The front door of the house opens up to a staircase that goes directly to the second floor of the house. There also was a side door of the house that provided access to the first floor. Over the side door was a small sign indicating that the address was 1779. No address was listed for the rear door of the house that also opened into the first floor.

{¶ 14} Each of the first three search warrants identified the intended search target (the area of the house that could be accessed through the back door) with the wrong address. Police executed the first and second search warrants on the downstairs unit of the house but identified the search target as 1781 East Rich Street, which was the address for the upstairs unit. Likewise, police executed the third search warrant on the upstairs unit of the house but identified the target as 1779 East Rich Street, which was the address for the downstairs unit. The fourth search warrant identified the correct address of the targeted unit (the upstairs unit).

{¶ 15} The state argued that even though the three search warrants contained incorrect addresses, suppression was not proper because the warrants contained descriptions of the target areas that were sufficient to allow the executing officers to locate and identify the intended target with reasonable effort. Following a

hearing, the trial court agreed with the state and denied appellant's motion to suppress.

{¶ 16} The two indictments were jointly tried to a jury.[2] During the trial, a number of police officers described the events that occurred before, during, and after they attempted to execute the first search warrant. Foster was the only person inside the house who testified.[3] Foster testified that he came to the house that night to gamble. He brought a handgun with him and recalled only two other people with guns: appellant and a man named "Chubs." Foster testified that appellant had a semiautomatic gun on him that night that was a two-tone, greenish color. The gun was "pretty different." Chubs had a black semiautomatic handgun.

{¶ 17} Foster testified that he was on the first floor of the house gambling with a number of other men when he heard a loud noise at the back door, like someone was trying to kick the door in. Everyone inside the house began scattering and yelling that they were being robbed. Foster ducked into a corner and heard shots fired from inside the house. He did not see who fired the shots.[4]

{¶ 18} The state presented evidence linking appellant to the drugs found in the house and to the shots fired from inside the house. Jamie Armstrong, a forensic scientist with the Columbus Police Department Crime Laboratory, testified that she found appellant's DNA on a number of baggies that contained cocaine and were found in the house. She also found appellant's DNA on the Springfield Armor USA XP .45 handgun found inside the house that night. Appellant was the major donor of the DNA on the gun, meaning that although there were multiple DNA types on the gun, his DNA was present in the greatest concentration.

{¶ 19} Mark Hardy, another forensic scientist with the Columbus Police Department Crime Laboratory, testified regarding the guns and ballistic evidence found at the scene of the shooting. He stated that he analyzed one bullet fragment found inside the house and concluded that it had been fired from the Springfield Armor USA XP .45 handgun found inside the house. He also

---

2. Before trial, the trial court dismissed one count of possession of cocaine and having a weapon while under disability.

3. Foster was named as a co-defendant in appellant's first indictment and was charged with two counts of felonious assault. At some point before appellant's trial, Foster entered into a plea agreement with the state in which he pleaded guilty to two counts of felonious assault with a firearm specification and received a five-year prison sentence. Foster also agreed to testify against appellant. The state agreed not to oppose judicial release for Foster after four years.

4. Foster also admitted to firing shots that night from his Smith & Wesson .40 handgun. Police found casings inside the house that were fired from his gun.

analyzed five spent bullet casings found inside the house and discovered ejector marks on the casings that led him to believe that the casings were at one time chambered in the Springfield Armor XP .45. He could not say that the gun fired the casings, but concluded that the casings had been inside the gun.

{¶ 20} The jury found appellant guilty of two counts of felonious assault with firearm specifications, one count of trafficking in cocaine, one count of possession of cocaine, one count of possession of cocaine with a major-drug-offender specification, and one count of possession of heroin.[5] The trial court sentenced appellant accordingly.

{¶ 21} Appellant appeals and assigns the following errors:

[1.] Appellant was denied a fair trial when the trial court refused to suppress the search of the premises in violation of the Fourth and Fourteenth Amendments of the Ohio and United States Constitutions.

[2.] The appellant was denied a right to a fair trial when the trial court overruled defendant's motion to sever the two indictments.

[3.] There was insufficient evidence to convict the defendant.

[4.] The verdict is against the sufficiency and manifest weight of the evidence.

{¶ 22} Appellant argues in his first assignment of error that the trial court erred when it denied his motion to suppress. We disagree.

{¶ 23} Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034; *State v. McClendon,* 10th Dist. No. 09AP–554, 2009-Ohio-6421, 2009 WL 4649968. In this case, appellant does not challenge any factual findings made by the trial court. Appellant contends that the trial court's legal conclusions were wrong. Thus, we must independently review whether those legal conclusions are correct.

---

5. The trial court found appellant guilty of one count of having a weapon while under disability.

{¶ 24} Appellant argues that the first three search warrants were invalid because they identified the portion of the house to be searched with the wrong address. We disagree. The Fourth Amendment to the United States Constitution specifies that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Crim.R. 41(C) also requires a search warrant and its supporting affidavit to particularly describe the place to be searched. *State v. Rader*, 12th Dist. No. CA2009–07–185, 2010-Ohio-1010, 2010 WL 917917, ¶ 21; *State v. Smith*, 9th Dist. No. 21069, 2003-Ohio-1306, 2003 WL 1240403, ¶ 17.

{¶ 25} Because a search warrant and supporting affidavit usually contain more information than just an address to identify the intended search target, a search warrant is not necessarily invalid if it describes the property to be searched with an incorrect address. *State v. Scott*, 7th Dist. No. 02 CA 108, 2003-Ohio-5011, 2003 WL 22171494, ¶ 22–24; *State v. Burton*, 1st Dist. No. C–080173, 2009-Ohio-871, 2009 WL 485430, ¶ 16; *State v. Jones*, 6th Dist. No. L–00–1231, 2003-Ohio-219, 2003 WL 139762, ¶ 74. Rather, to determine whether a property description is constitutionally valid, a trial court must determine whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort and whether there is any reasonable probability that another premises might be mistakenly searched. *State v. Pruitt* (1994), 97 Ohio App.3d 258, 261, 646 N.E.2d 547; *Jones* at ¶ 74; *Burton* at ¶ 16. See also *Steele v. United States* (1925), 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757.

{¶ 26} Here, the trial court concluded that the first three search warrants, notwithstanding the incorrect addresses, contained descriptions that were sufficient to enable the executing officers, with reasonable effort, to locate and identify the intended premises. The description also made mistaken searches unlikely. We agree.

{¶ 27} The first search warrant accurately described the house to be searched as a two-story, white-sided, brown-brick home on East Rich Street. The front of the house identified the address as 1781 East Rich Street, which was the address listed on the search warrant. This description allowed the executing officers to locate and identify the house with reasonable effort. The search warrant also stated that the drug buy occurred from a rear door on the first floor of the house. This information was sufficient to identify the target premises and enabled the executing officers to locate the premises with reasonable effort. We also note that the house had been under surveillance before the search, and the officer who drafted the affidavit used to obtain the first search warrant also participated in the execution of that search warrant. These facts diminish the chances of a

mistaken search. *State v. Webb* (July 19, 1993), 12th Dist. No. CA92–12–242, 1993 WL 265488; *State v. Pitts* (Nov. 6, 2000), 4th Dist. No. 99 CA 2675 2000-Ohio-1986, 2000 WL 1678020; *State v. Campbell* (Apr. 16, 1992), 8th Dist. No. 60178, 1992 WL 80015.

{¶ 28} Similarly, the third search warrant described the same two-story house and specifically identified the second floor of the house as the intended search target. Therefore, notwithstanding the mistaken use of the address for the first-floor unit, that warrant's description was also sufficient to enable the executing officers to identify the correct premises to be searched and to prevent mistaken searches.

{¶ 29} The description of the intended search target in the second search warrant was not as specific as the other two search warrants. It only described the target as "1781 E. Rich street, a light-colored, vinyl siding covered two-story house." However, the second search warrant was requested shortly after the shootout outside the first-floor rear door. The police did not leave the scene of the shooting. The warrant sought to collect evidence relating to the shooting at the same location. Thus, even though the warrant contained the address of the second-floor unit, the executing officers could identify the actual property to be searched (the first floor) with reasonable effort, and there was no chance of a mistaken search. We also note that the executing officers searched the first floor of the house pursuant to this warrant and did not search the second floor.

{¶ 30} Although the three search warrants contained incorrect addresses for the intended search targets, under these circumstances, the property descriptions were sufficient to enable the executing officers to locate and identify the correct premises with reasonable effort and to minimize the chances of a mistaken search. Because the trial court did not err when it denied appellant's motion to suppress, we overrule appellant's first assignment of error.

{¶ 31} Appellant contends in his second assignment of error that the trial court erred by denying his motion to sever the two indictments. However, the record indicates that appellant never asked the trial court to sever the two indictments. A day before the filing of appellant's second indictment, he requested the trial court to sever the drug charges from the felonious-assault charges in case No. 08CR05–3601 and to separately try those charges. The trial court denied that request. One day after the filing of the second indictment, the state requested the trial court to join the two indictments. The trial court granted the state's motion and joined the indictments. Appellant did not request severance of the indictments before, during, or after trial.[6]

---

6. Although appellant's trial counsel again raised the issue of severance of the drug charges and the felonious-assault charges at trial, he did not request severance of the two indictments at trial.

{¶ 32} Because appellant did not request severance of the two indictments in the trial court, he waived any error in this regard absent plain error. Crim.R. 52(B); *State v. Morales,* 10th Dist. No. 03AP–318, 2004-Ohio-3391, 2004 WL 1446117, ¶ 18; *State v. Stiles,* 3d Dist. No. 1–08–12, 2009-Ohio-89, 2009 WL 57062, ¶ 23 (failure to renew motion to sever during trial waives issue on appeal).

{¶ 33} Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Even if an error satisfies these prongs, appellate courts are not required to correct the error. Appellate courts retain discretion to correct plain errors. Id.; *State v. Litreal,* 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018, ¶ 12. Courts are to notice plain error under Crim.R. 52(B) " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 34} The law favors the joinder of multiple offenses in a single trial. *State v. Brinkley,* 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 28; *State v. Coley* (2001), 93 Ohio St.3d 253, 259, 754 N.E.2d 1129. Pursuant to Crim.R. 13, two indictments may be tried together if the offenses could have been joined in a single indictment. *State v. Tipton,* 10th Dist. No. 04AP–1314, 2006-Ohio-2066, 2006 WL 1102812, ¶ 25. Nevertheless, a trial court may grant a severance under Crim.R. 14 if a defendant affirmatively establishes that he would be prejudiced by a joinder. *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293; *State v. Wilkins,* 12th Dist. No. CA2007–03–007, 2008-Ohio-2739, 2008 WL 2331367, ¶ 13.

{¶ 35} Appellant argues that the trial court should have severed the indictments because he was prejudiced by the joinder. We disagree.

{¶ 36} A defendant claiming error in the trial court's refusal to allow separate trials has the burden of affirmatively showing that his rights were prejudiced. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 421 N.E.2d 1288, citing *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 405 N.E.2d 247. Appellant argues that joinder prejudiced him by limiting his ability to present a defense, because if he testified on his own behalf on the felonious-assault charge, he could be put in a situation where he would incriminate himself on the drug charges. We do not find this argument persuasive. The mere possibility that defendant might have better choice of trial tactics if counts were separated or mere possibility that he might desire to testify on one

838

count and not on the other is insubstantial and speculative and is not sufficient to show prejudice in joinder of multiple charges. *Torres* at 344; *State v. Walker* (June 30, 2000), 2d Dist. No. 17678, 2000 WL 873222 (prejudice not shown just because defendant may have had better defense strategies absent joinder).

{¶ 37} Appellant also argues that joinder of the indictments confused the jury regarding the identification of the shooter on the felonious-assault charges. Specifically, he argues that the jury was more likely to convict him of the assault charges if they believed he was a drug dealer. This is also nothing more than speculation and does not rise to the level of prejudice necessary to sever indictments. See *State v. Broadnax*, 2d Dist. No. 21844, 2007-Ohio-6584, 2007 WL 4305712, ¶ 40.

{¶ 38} Even if appellant could establish prejudice in this case, the state can negate claims of prejudice in two ways. *State v. Cameron*, 10th Dist. No. 09AP–56, 2009-Ohio-6479, 2009 WL 4698546, ¶ 35, citing *Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959; *Tipton*, 2006-Ohio-2066, 2006 WL 1102812, at ¶ 27. First, if the state shows that evidence of one offense would be admissible at a separate trial of the other offense as "other acts" evidence under Evid.R. 404(B), then joinder of the offenses in the same trial cannot prejudice the defendant. *State v. LaMar*, 95 Ohio St.3d 181, 2002–Ohio–2128, 767 N.E.2d 166, ¶ 50; *Brinkley* at ¶ 30. Second, a joinder cannot result in prejudice if the evidence of the offenses joined at trial is simple and direct, so that a jury is capable of segregating the proof required for each offense. *State v. Johnson* (2000), 88 Ohio St.3d 95, 109, 723 N.E.2d 1054; *State v. Mills* (1992), 62 Ohio St.3d 357, 362, 582 N.E.2d 972. These two tests are disjunctive, so that the satisfaction of one negates a defendant's claim of prejudice without having to consider the other test. *Cameron* at ¶ 35, citing *Mills*.

{¶ 39} Evidence is "simple and direct" if the jury is capable of segregating the proof required for each offense. Id. at ¶ 40. "The rule seeks to prevent juries from combining the evidence to convict the defendant, instead of carefully considering the proof offered for each separate offense." Id. Here, the evidence of the offenses is simple and direct and is not confusing or difficult to separate. The offenses in each indictment were analytically and logically separate: assault charges in which appellant allegedly shot at police officers and drug charges in which appellant allegedly possessed drugs. Although the offenses occurred at the same time and in the same residence, the offenses were separate and not so complex that the jury would have difficulty separating the proof required for each offense. *Tipton*, 2006-Ohio-2066, 2006 WL 1102812, at ¶ 31. Therefore, even if appellant had shown prejudice, manifest injustice did not result from the trial court's failure to sever the indictment.

{¶ 40} Appellant has not demonstrated error, let alone plain error, in the trial court's failure to sever appellant's two indictments. Accordingly, we overrule appellant's second assignment of error.

{¶ 41} Appellant contends in his third and fourth assignments of error that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.[7] The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus.

{¶ 42} The Supreme Court of Ohio delineated the role of an appellate court presented with a sufficiency-of-the-evidence argument in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *

{¶ 43} Whether the evidence is legally sufficient is a question of law, not fact. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh* (2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492.

{¶ 44} A manifest-weight-of-the-evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than

---

7. In these assignments of error, appellant addresses only his felonious-assault convictions. Accordingly, we will not address his other convictions.

the other. *State v. Brindley,* 10th Dist. No. 01AP–926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " Id.

{¶ 45} A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. *State v. Raver,* 10th Dist. No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, ¶ 21. Neither is a conviction against the manifest weight of the evidence because the trier of fact believed the state's version of events over the appellant's version. *State v. Gale,* 10th Dist. No. 05AP–708, 2006-Ohio-1523, 2006 WL 827777, ¶ 19; *State v. Williams,* 10th Dist. No. 08AP–719, 2009-Ohio-3237, 2009 WL 1911842, ¶ 17. The trier of fact is free to believe or disbelieve all or any of the testimony. *State v. Jackson* (Mar. 19, 2002), 10th Dist. No. 01AP–973, 2002 WL 416994; *State v. Sheppard* (Oct. 12, 2001), 1st Dist. No. C–000553, 2001 WL 1219765. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Williams,* 10th Dist. No. 02AP–35, 2002-Ohio-4503, 2002 WL 2005815, ¶ 58; *State v. Clarke* (Sept. 25, 2001), 10th Dist. No. 01AP–194, 2001 WL 1117575. Consequently, an appellate court must ordinarily give great deference to the fact finder's determination of the witnesses' credibility. *State v. Covington,* 10th Dist. No. 02AP–245, 2002-Ohio-7037, 2002 WL 31839206, ¶ 28; *State v. Hairston,* 10th Dist. No. 01AP–1393, 2002-Ohio-4491, 2002 WL 2005683, ¶ 74.

{¶ 46} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Braxton,* 10th Dist. No. 04AP–725, 2005-Ohio-2198, 2005 WL 1055819, ¶ 15, citing *State v. Roberts* (Sept. 17, 1997), 9th Dist. No. 96CA006462, 1997 WL 600669. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id. In that regard, we first examine whether appellant's convictions are supported by the manifest weight of

the evidence. *State v. Sowell,* 10th Dist. No. 09AP–443, 2008-Ohio-3285, 2008 WL 2600222, ¶ 89.

{¶ 47} While not clearly articulated, appellant appears to argue that the state failed to prove that he committed felonious assault because the state failed to prove that he was the one who fired a gun at the officers. We disagree.

{¶ 48} Derrick Foster was the only person inside the house at the time of the shooting who testified. Although he heard shots fired from inside the house, he did not see appellant shoot a gun. In fact, no one testified that appellant fired a gun that night. However, it is well established that circumstantial evidence possesses the same probative value as direct evidence. Id. at ¶ 92, citing *Treesh,* 90 Ohio St.3d 460, 739 N.E.2d 749. The state presented circumstantial evidence linking appellant to a gun that was fired inside the house that night.

{¶ 49} Foster testified that before he fired his gun, another person inside the house fired a gun. Foster also testified that appellant was one of only two other men inside the house who had a gun that night. Mark Hardy testified that there two guns were fired from inside the house: Foster's gun and the Springfield Armor USA XP .45. A picture of that gun introduced at trial shows a two-tone gun, green on the bottom and black on the top. That is how Foster described the gun appellant had with him that night. Jamie Armstrong testified that appellant was the major donor of DNA on the Springfield Armor USA XP .45. This is evidence demonstrating appellant's connection to this gun. The state also presented evidence indicating that the Springfield Armor USA XP .45 was fired inside the house that night. Hardy testified that a bullet fragment found inside the house was fired from the Springfield Armor USA XP .45. Five other casings found inside the house had marks indicating that they were at some point chambered in the Springfield Armor XP .45.

{¶ 50} In light of this circumstantial evidence, the jury did not clearly lose its way in concluding that appellant fired a gun at the officers. Accordingly, appellant's convictions are not against the manifest weight of the evidence. This resolution is also dispositive of appellant's claim that his convictions were not supported by sufficient evidence. *Sowell,* 2008-Ohio-3285, 2008 WL 2600222. Accordingly, we overrule appellant's third and fourth assignments of error.

{¶ 51} In conclusion, we overrule appellant's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

FRENCH and McGRATH, JJ., concur.