[Cite as *State v. Long*, 2012-Ohio-3052.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110160 |
| | | TRIAL NO. B-0903962-C |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| ERIC LONG, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  July 3, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman,* Chief Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna,* for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge**.

{¶1}     Defendant-appellant Eric Long appeals from his convictions, following a jury trial.  In July 2009, the Hamilton County Grand Jury returned a 13-count indictment charging the then 17-year-old Eric Long with offenses arising out of three separate incidents that had occurred over a three-week span in and near Lincoln Heights.  The charges set forth in the indictment accused Long and his codefendants, Fonta Whipple and Jayshawn Clark, with the felonious assaults of Keyonni Stinson, Mark Keeling, and Kyrie Maxberry; the aggravated murders of Keith Cobb and Scott Neblett with prior calculation and design; and various weapons charges including carrying a concealed weapon, having a weapon under a legal disability, and discharging a firearm at or into a habitation.

{¶2}     Long argues in his eight assignments of error that (1) his convictions were contrary to the manifest weight of the evidence and were based upon insufficient evidence, (2) he was denied the effective assistance of trial counsel, (3) the trial court erred in imposing an excessive sentence, (4) the trial court failed to keep evidence of prior bad acts from the jury, and (5) the trial court erroneously permitted joinder of the offenses in a single trial proceeding.  We find none of the assignments to have merit and affirm the trial court's judgment.

### I.  The Matthews Avenue Shooting

{¶3}     In the early morning hours of March 4, 2009, Keyonni Stinson, her boyfriend, Mark Keeling, and Kyrie Maxberry returned to Stinson's Matthews Avenue[1] home in Lincoln Heights after an evening at the Garage Bar in Sharonville.  Keeling had had a previous altercation with Whipple, Clark, and Long.  Therefore, when he spotted the

---

[1] The various witnesses and parties also refer to Matthews Street and Matthews Drive.  Stinson refers to her home as being on Matthews Avenue, and so shall we.

three codefendants sitting in a gray van outside Stinson's house, he and his friends hurried inside. Within seconds, a hail of gunfire engulfed the house. The rounds penetrated the windows and walls and severely injured Keeling and Maxberry.

{¶4} Police investigators recovered nearly 30 spent rifle cartridges in 7.62 mm and .223-caliber outside the residence. A ballistics expert determined the rounds had come from three different assault rifles.

## II. The I-75 Murders

{¶5} Two weeks later, an altercation occurred outside the Garage Bar between Scott Neblett and Trenton Evans. At a nearby gas station, Evans found Whipple, Clark, Long, and another person sitting in a silver Dodge Caliber rented for Whipple by Alisha Kloth, the mother of one of his children. They discussed Evans's altercation with Neblett. Neblett arrived at the gas station. Moments later, at about 2:30 a.m., William Gray was heading for work on southbound I-75. Gray spotted Neblett's red Chevy Blazer in hot pursuit of a silver Caliber. The two vehicles pulled next to each other, and Gray saw muzzle flashes and heard multiple gunshots coming from the Caliber. The Caliber exited from the highway at the Woodlawn/Evendale exit toward Lincoln Heights. The Blazer spun out of control, hit the guardrail, and rolled several times. Both Neblett and his passenger, Keith Cobb, were dead from multiple gunshot wounds.

{¶6} Police recovered the Caliber rented for Whipple in a Lincoln Heights parking lot. Inside the vehicle were hospital discharge papers for Whipple. Whipple's and Clark's DNA was found inside the vehicle. A third DNA sample was found to be not inconsistent with Long's DNA.

{¶7} Police recovered three .223-caliber casings, one 7.62 mm casing, and six 9 mm pistol cartridge casings from the highway. A ballistics expert testified at trial that by comparing marks on the casings, he had determined that two of the assault rifles used in the Matthews Avenue shooting had also been used to attack Neblett and Cobb on I-75.

### III. Long's Capture on Steffen Street

{¶8}     Five days later, Lincoln Heights police officer Michael Lowe spotted Long. Officer Lowe chased Long down Steffen Street and through the yards of a number of homes. Officer Lowe noted that Long was brandishing a silverish or gray handgun in his right hand when he fled. Long was ultimately captured hiding in a pickup truck bed. He did not have the handgun on his person when captured. Two weeks later, Keith Harris, a Steffen Street homeowner, found a loaded 9 mm Smith & Wesson semiautomatic pistol in his yard. The ballistics expert testified at trial that the 9 mm pistol was one of the weapons used in the I-75 attack.

### IV. Trial

{¶9}     Before trial, Long moved the trial court to separate the trial of the three incidents. The court denied the motion, and in January 2011, the three codefendants were tried together for each indicted offense. Twenty-five witnesses testified at trial, and dozens of pieces of physical evidence were introduced. At the conclusion of the trial, the jury returned guilty verdicts on each offense lodged against Long and many of the accompanying firearm specifications. After reviewing sentencing memoranda, a presentence investigation report, victim-impact statements, and the statement of Long's grandfather, the trial court sentenced Long to two terms of imprisonment for life without possibility of parole for the aggravated murders of Neblett and Cobb. It also imposed an aggregate prison term of 19 years on the remaining charges and firearm specifications. This appeal ensued.

### V. No Prejudicial Joinder

{¶10}     For clarity, we will address Long's assignments of error in temporal order.

{¶11}     Long first asserts that his right to a fair trial was compromised by the trial court's decision to permit the I-75 murders and Matthews Avenue shooting to be tried together. Long argues the trial court erred when it permitted the state to join the incidents

4

for trial in a single proceeding, even though they had been presented in a single indictment.

{¶12} In most cases, a criminal trial revolves around one discrete incident—a single assault or a single theft. But the state may join separate incidents for trial in a single proceeding. The joinder of multiple offenses for trial is encouraged to conserve judicial resources, to reduce the chance of incongruous results in successive trials, and to diminish inconvenience to victims and witnesses. *See State v. Clifford*, 135 Ohio App.3d 207, 211, 733 N.E.2d 621 (1st Dist.1999), citing *State v. Thomas*, 61 Ohio St. 2d 223, 400 N.E.2d 401 (1980).

{¶13} Long argues that the evidence of the two offenses was not interwoven and did not demonstrate a common modus operandi or behavioral fingerprint. He argues that little evidence links Long to these offenses. Thus, he asserts that joinder of the offenses permitted the jury to hear cumulative evidence of Long's "criminal disposition," and that the jury acted on that evidence to find him guilty of the two offenses.

{¶14} Two or more offenses may be charged in the same indictment if the charged offenses are (1) of "the same or similar character," (2) "based on the same act or transaction," (3) "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan," or (4) "part of a course of criminal conduct." Crim.R. 8(A).

{¶15} Crim.R. 14 provides for relief from prejudicial joinder: "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶16} The state can negate claims of prejudice by showing either (1) that the evidence for each count will be admissible in a trial of the other counts under Evid.R. 404(B) or (2) that the evidence for each count is sufficiently separate and distinct so

as not to lead the jury into treating it as evidence of another. *See State v. Echols*, 128 Ohio App.3d 677, 692, 716 N.E.2d 728 (1st Dist.1998), citing *State v. Wiles*, 59 Ohio St.3d 71, 77, 571 N.E.2d 97 (1991). We note that the satisfaction of one test "negates the defendant's claim of prejudice without the need to consider the other." *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 38 (10th Dist.); *see also State v. Garrett*, 1st Dist. No. C-090592, 2010-Ohio-5431.

{¶17} Where, as here, a defendant has moved for severance and has renewed the motion at trial, we review the trial court's decision to join offenses for trial under an abuse-of-discretion standard. *See State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 197, citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus; *compare State v. Echols*, 146 Ohio App.3d 81, 88, 765 N.E.2d 379 (1st Dist.2001) (failure to renew objection to joinder waives the issue on appeal).

{¶18} Thus, to succeed on this assignment of error, Long must demonstrate that, in making its decision, the trial court exhibited an attitude that was "unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). In applying this standard, a reviewing court "is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990); *see also State v. Morris*, __ Ohio St.3d __, 2012-Ohio-2407, __ N.E.2d __, ¶ 14. Rather, if the trial court's exercise of its discretion exhibited a "sound reasoning process" that would support its decision, a reviewing court will not disturb that determination. *Morris* at ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶19} Here, we find no prejudice from the trial court's failure to sever the charges for the I-75 murders and the Matthews Avenue shooting. The proof presented as to each of the charges was direct and uncomplicated, thus enabling the jury to

segregate the relevant proof for each offense. *See Echols*, 128 Ohio App.3d at 692, 716 N.E.2d 728. Long conceded as much in his trial motion, noting that evidence of the crimes was "separate and distinct." The two incidents occurred in separate locations, two weeks apart. The state's ballistics expert tied the assault rifles used in the Matthews Avenue shooting to those used in the I-75 murders and also tied the spent 9 mm casings found at the I-75 scene with the semiautomatic pistol found along the route that Long had taken when fleeing from Officer Lowe. The state's evidence was presented chronologically by incident, and the trial court instructed the jury to consider each count separately.

{¶20} Since the trial court exhibited a sound reasoning process supporting the conclusion that evidence of the two offenses was sufficiently separate and distinct, the court did not abuse its discretion in denying Long's motion for separate trials for offenses arising out of these incidents. The eighth assignment of error is overruled.

## VI. Effective Assistance of Counsel

{¶21} In his third assignment of error, Long claims he was denied the constitutionally guaranteed effective assistance of trial counsel when his counsel failed to give Long all the "trial paperwork" that he had requested. At the commencement of trial, Long complained to the court that his counsel had failed to share all the state's discovery with him.

{¶22} To prevail on a claim of ineffective assistance of trial counsel, an appellant must show, first, that trial counsel's performance was deficient and, second, that the deficient performance was so prejudicial that he was denied a reliable and fundamentally fair proceeding. *See Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *see also Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. A reviewing court must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance. *See State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998).

{¶23} Here, experienced trial counsel explained in open court that he had provided Long with all discovery material that had not been designated "counsel only" under Crim.R. 16(C) and 16(F). After reviewing the entire record, we hold that counsel's efforts were not deficient and that Long was not prejudiced in any way. The third assignment of error is overruled.

## VII. Other-Acts Challenges

{¶24} In his sixth and seventh assignments of error, Long argues that the trial court erred in not declaring a mistrial on grounds that the jury had repeatedly heard improper evidence of the defendants' prior bad acts.

{¶25} Generally, Evid.R. 404(B) provides that evidence of prior crimes, wrongs, or bad acts committed by a defendant are inadmissible at trial to prove that the defendant is a criminal. *See Morris*, ___ Ohio St.3d ___, 2012-Ohio-2407, ___ N.E.2d ___, ¶ 12. The rule prohibits the state from arguing that because a person acted in a particular way on a distinct occasion in the past, he likely acted in the same way with regard to the facts raised in this trial. *E.g., State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). Other-acts evidence is often excluded because the jury might punish the defendant for his past conduct rather than weighing only the evidence produced at trial and relating to the charged crimes. The challenged acts, however, do not have to be like or similar to the crimes raised at trial. Other-acts evidence is admissible to show the defendant's motive, opportunity, intent, or identity. *See* Evid.R. 404(B). Or the prior acts may be admissible where they form the immediate background of the charged crimes and are inextricably related to those crimes. *See Morris* at ¶ 13.

{¶26} The trial court's rulings "regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the

sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *Morris* at syllabus.

{¶27} The decision to grant or deny a motion for mistrial is also consigned to the sound discretion of the trial court. *See State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 92; *see also State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 42. A mistrial "need be declared only when the ends of justice so require and a fair trial is no longer possible." *See State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). The Ohio Supreme Court has repeatedly noted that the trial court is in the best position to reach this determination and to decide whether the situation warrants the declaration of a mistrial. *E.g., Ahmed* at ¶ 92.

{¶28} The gravamen of Long's argument is that, at six points in the trial, various witnesses made inadmissible statements informing the jury that the defendants had committed violent or other illegal acts in the past. He argues that the trial court erred either in admitting that testimony or in denying his motions for mistrial. We disagree.

{¶29} Long begins his argument addressing Keyonni Stinson's statement that two nights before the Matthews Avenue attack, the three codefendants had "shot up the highway coming from Annie's" bar. We note that Long objected to the statement. The trial court sustained the objection and issued a curative instruction to the jury that it should disregard it. The jury can be presumed to have followed the court's instructions, including instructions to disregard testimony. *See Ahmed* at ¶ 93. In light of the curative instruction and the fact that Stinson's statement was corroborative of Keeling's unobjected-to testimony about incidents with the defendants at Annie's, the trial court's decision to deny the mistrial motion exhibited a sound reasoning process and will not be disturbed. *See Ahmed* at ¶ 92*; see also Morris*, ___ Ohio St.3d ___, 2012-Ohio-2407, ___ N.E.2d ___, at ¶ 14.

{¶30} Long next contests Mark Keeling's statement that he had not wanted to visit the Garage Bar on the night of the Matthews Avenue shooting "because we had just got shot at Sunday night." We find no error because when Long objected to the statement, the trial court again sustained the objection and issued a curative instruction. *See Ahmed* at ¶ 92.

{¶31} Long also contests the more problematic statements made by Evendale Police Officer Steve Niehauser. Officer Niehauser testified that Trenton Evans had identified the individuals in the silver Dodge Caliber and Neblett in the Chevy Blazer after viewing various surveillance videos from the gas station and a restaurant near the Garage Bar. Upon the vigorous objection of each defendant, the trial court struck Officer Niehauser's statement and issued a curative instruction. Officer Niehauser ultimately corrected his statement when he testified that Evans had not identified any of the codefendants from the video. The trial court took an active role in resolving this matter and did not abuse its discretion in denying the mistrial motion. *See Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, at ¶ 92. We note that in this appeal Long has not raised the issue of whether the surveillance videotape had been properly authenticated under Evid.R. 901.

{¶32} Long's next contention concerns the statement of Derryl Anderson, a Garage Bar patron, that he had seen Whipple and Clark, but not Long, together and armed with an assault rifle days before the Matthews Avenue shooting. We note that the testimony referred only to Whipple and Clark. The trial court's decision to admit Anderson's statement because it described the immediate background of one of the charged crimes, and because it identified an unusual weapon that was inextricably related to that crime, exhibited a sound reasoning process and will not be disturbed on appeal. *See Morris* at ¶ 13.

{¶33} Next, Long argues that a mistrial should have been granted based on Officer Niehauser's trial testimony that he had told Evans, during questioning, that Long

was in custody, was crying, and was telling the whole story to the authorities to cut a favorable deal. The trial court again took an active role in clarifying the issue. A stipulation by the parties was read to the jury stating that there had been no discussions about any of the defendants becoming witnesses for the state, that neither the state nor the defendants had engaged in negotiations for plea bargains, and that the defendants had maintained their innocence throughout the proceedings. In light of this unusual and complete repudiation of Officer Niehauser's testimony, the trial court did not abuse its discretion.

{¶34} Finally, Long argues that police officer LaRoy Smith improperly commented on Long's bind-over proceeding in juvenile court. Again, trial counsel objected. And again, the trial court sustained the objection and issued a curative instruction that the jury was to disregard any reference to juvenile court proceedings. In light of the curative instruction, the trial court's decision to deny the mistrial motion exhibited a sound reasoning process and will not be disturbed. *See Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, at ¶ 92*; see also Morris*, ___ Ohio St.3d ___, 2012-Ohio-2407, ___ N.E.2d ___, at ¶ 14.

{¶35} In addition to these arguments, Long contends that the cumulative effect of the trial court's evidentiary errors denied him a fair trial. Under the doctrine of cumulative error, even though "violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶36} But the doctrine is not applicable where the trial court did not commit multiple errors. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. We have reviewed the entire transcript of the trial and the related evidence. We are convinced that Long received a fair trial. None of the trial court's

rulings on other-acts evidence individually or cumulatively support any demonstration that the outcome of the trial would have been different but for those rulings. *See State v. Dieterle*, 1st Dist. No. C-070796, 2009-Ohio-1888, ¶ 38.

{¶37}    The sixth and seventh assignments of error are overruled.

### VIII.    Sufficiency and Weight-of-the-Evidence Claims

{¶38}    In two interrelated assignments of error, Long challenges the weight and sufficiency of the evidence adduced at trial to support his convictions.   He argues that the state failed to identify him as one of the perpetrators of the Matthews Avenue assault, failed to identify him as one of the I-75 attackers, and failed to produce evidence that he had possessed a firearm  when he was chased and arrested near Steffen Street.

{¶39}    For his role in the Matthews Avenue shootings, Long was convicted of felonious assault under R.C. 2903.11(A)(2), which proscribes knowingly causing or attempting to cause physical harm to another by means of a deadly weapon.  He was also convicted of knowingly discharging a firearm into an occupied habitation without privilege to do so.  *See* R.C. 2923.161.

{¶40}    The aggravated-murder charges against Long for the I-75 murders were governed by R.C. 2903.01(A).   Under this statute, the state was required to prove that Long or his accomplices had purposely and with prior calculation or design caused the deaths of Cobb and Neblett.

{¶41}    The remaining convictions, related to Long's capture on Steffen Street, required proof beyond a reasonable doubt that Long had knowingly carried a concealed firearm, and that he had done so under the disability of a prior juvenile adjudication for drug trafficking.  *See* R.C. 2923.12 and 2923.13.

{¶42}    Our review of the entire record fails to persuade us that the jury, acting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.  *State v. Thompkins*, 78

Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We can find no basis in this record to conclude that this is "an exceptional case" in which the jury lost its way. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶43} The jury was entitled to reject Long's theory that he simply had not participated in the Matthews Avenue shooting and the I-75 murders, and that the state had failed to prove he had possessed a firearm. Long's theory of defense rested largely on the circumstantial nature of the state's evidence and on the trial testimony of three defense witnesses who questioned the veracity of the Matthews Avenue victims and denied seeing the codefendants at the Garage Bar before the I-75 murders. And Long's experienced trial counsel highlighted the inconsistencies in the testimony of the state's witnesses.

{¶44} But it is abundantly clear that the state presented ample evidence to support the convictions. The state introduced substantial physical and testimonial evidence tying Long to both shootings. The Matthews Avenue victims each testified that they had seen Long in the gray van immediately before they entered the house. Keeling testified that he had been involved in a recent incident with the three perpetrators at a bar. The evidence was undisputed that moments after entering Stinson's home, the victims were the target of multiple rounds of assault-weapons fire. Keeling and Maxberry sustained serious injuries in that fusillade. The state's ballistics expert testified that the spent 7.62 mm and .223-caliber shell casings outside the home had come from three different assault rifles.

{¶45} Witnesses also identified Long and his codefendants sitting in the silver Caliber rented by Kloth for Whipple after the Neblett-Evans altercation at the Garage Bar and just before the I-75 murders. Witnesses described the horrific scene on I-75 of the Caliber occupants shooting into the vehicle occupied by Neblett and Cobb. The rented Caliber was later found abandoned with numerous bullet holes in

the roof and body. Police recovered Whipple's hospital discharge papers and the DNA of Whipple and Clark from inside the vehicle. Officers also recovered three .223-caliber casings, one 7.62 mm casing, and six 9 mm pistol cartridge casings from the highway. A ballistics expert testified that two of the assault rifles used in the Matthews Avenue shooting had also been used on I-75.

{¶46} Finally, Officer Lowe reported that Long had brandished a silverish or gray handgun when he fled capture on Steffen Street. When Long was found and arrested, the firearm was gone. The state's ballistics expert testified the stainless steel 9 mm semiautomatic pistol found in Keith Harris's Steffen Street yard was used in the I-75 murders.

{¶47} While there were inconsistencies in some witnesses' testimony, these inconsistencies did not significantly discredit the testimony and were to be expected when ordinary citizens observed rapidly occurring and shocking events such as bar fights, a drive-by shooting, and a moving gunfight on a public highway. As the weight to be given the evidence and the credibility of the witnesses were for the jury, sitting as the trier of fact, to determine in resolving conflicts and limitations in the testimony, the jury could have found that Long had committed, with the requisite mens rea, each of the charged offenses. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶48} When reviewing the legal sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether the evidence could have convinced any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. *See State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 36; *see also Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560

(1979). In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses, as both are functions reserved for the trier of fact. *See State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ___ N.E.2d ___, ¶ 25 (1st Dist.2011).

{¶49} Here, the record reflects substantial, credible evidence from which the triers of fact could reasonably have concluded that all elements of the charged crimes had been proved beyond a reasonable doubt, including that Long had feloniously assaulted the Matthews Avenue victims by firing into an occupied habitation, had purposely caused the deaths of Neblett and Cobb, and had knowingly carried a concealed firearm while under a disability. *See Conway* at ¶ 36.

{¶50} The first and second assignments of error are overruled.

### IX. The Sentences Were Neither Excessive Nor Cruel and Unusual

{¶51} In his fourth and fifth assignments of error, Long argues that the trial court erred in imposing an excessive sentence.

{¶52} First, he asserts that the trial court's imposition of two sentences of life imprisonment without parole eligibility constituted a cruel and unusual punishment proscribed by the Eighth Amendment to the United States Constitution. We note that the United States Supreme Court has recently held that a mandatory life-without-parole sentence for juvenile offenders is cruel and unusual punishment. *See Miller v. Alabama*, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___, 2012 U.S. LEXIS 4873. While Long was under age 18 when he committed aggravated murder, the trial court's sentence, unlike that in *Miller*, was not mandated by operation of law. The trial court had discretion to impose either life without parole eligibility or a lesser sentence of life with parole eligibility after serving a definite period of incarceration. *See* R.C. 2929.03(A)(1); *compare* R.C. 2929.03(E)(2) (mandatory life term without parole

eligibility for juvenile convicted of aggravated murder and an aggravating circumstance).  The court was able to consider whether Long's "youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate."  *Miller* at __, 2012 U.S. LEXIS 4873, *9.

{¶53}   The record reflects that the trial court did consider those factors before imposing sentence.  The trial court, which had supervised the trial and had heard all the evidence, reviewed the parties' sentencing memoranda, the presentence investigation report reflecting Long's record of juvenile adjudications, victim-impact statements, and a plea for mercy from Long's grandfather.  At the sentencing hearing, Long's counsel argued that Long's youth "puts him in a different light than the other two individuals" and asked the court to impose a minimum term of 30 years in prison that would "give [Long] a glimmer of hope, give him a chance that some day he [could] return to society, hopefully a changed and rehabilitated man."

{¶54}   At the conclusion of the sentencing hearing, the court stated that:

> Having tried this case and heard this case for four weeks, * * * having observed also the violent history and record of Mr. Long, it's clear to me that all three defendants, for whatever reason, don't value human life.
>
> I mean, the violence, the senseless, just indiscriminate violence absolutely, as everyone has said here, absolutely no remorse.  It's chilling.  It's chilling to see you three standing here, and I have no doubt in my mind that if you walked out the door of this courtroom, you would kill again, and it wouldn't bother you.  And that's sad, but it's true.

> After considering the risks that [you] will commit another offense, the need for protecting the public, nature and circumstances of these offenses, your history, character and condition, Court finds that prison sentences are required.

{¶55}  The court then imposed life-without-parole-eligibility sentences for the killing of Keith Cobb and Scott Neblett.  Long's sentence did not run afoul of the Eighth Amendment's proscriptions affecting juvenile offenders.

{¶56}  Otherwise, a sentence such as this one that falls within the range provided by statute cannot amount to cruel and unusual punishment.  *See McDougle v. Maxwell,* 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964).  In light of the facts revealed at trial and in the sentencing proceedings, Long's sentence of life without parole eligibility was not so grossly disproportionate to the offenses that it "shock[s] the sense of justice of the community." *State v. Weitbrecht*, 86 Ohio St.3d 368, 371, 715 N.E.2d 167 (1999), quoting *McDougle* at 70; *see also State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 14.

{¶57}  Long next argues that the trial court erred in imposing an excessive sentence and in failing "to even consider" the purposes and principles of felony sentencing and the other statutory sentencing factors before imposing sentence.  Since Long's sentence was imposed before the effective date of Am.Sub.H.B. 86, we conduct a two-part review of the sentences of imprisonment.  *See State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.  First, we must determine whether the sentences were contrary to law.  *See id.* at ¶ 14.  Then, if the sentences were not contrary to law, we must review each sentence to determine whether the trial court abused its discretion in imposing it.  *See id.* at ¶ 17.

{¶58}  Here, the sentences imposed were not contrary to law.  Long concedes that the sentences were within the ranges provided by statute for aggravated murder, a

special felony, and for the other felony offenses and specifications. *See* R.C. 2929.03(A) and 2929.14(A); *see also State v. Phelps*, 1st Dist. No. C-100096, 2011-Ohio-3144, ¶ 40. In light of the seriousness of the offenses—which include killing two human beings during a moving gunfight on an interstate highway, spraying an occupied home with assault-rifle fire, seriously injuring two persons, and carrying a concealed weapon—we cannot say that the trial court abused its discretion in imposing life sentences and the other sentences of set length, many of which were ordered to be served concurrently. *See Kalish* at ¶ 17.

{¶59} And although the trial court did not specifically state that it had considered the R.C. 2929.11 and 2929.12 factors, its statements made before imposing sentence demonstrate that the court engaged in a particularized consideration of the purposes and principles of felony sentencing before imposing sentence. To the limited extent that the trial court record is silent on any other statutory factors, we presume that the court properly considered them. *See State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *see also State v. Love*, 194 Ohio App.3d 16, 2011-Ohio-2224, 954 N.E.2d 202, ¶ 14 (1st Dist.). Moreover, the record simply does not reflect Long's contention that the trial court failed to consider Long's youth as a mitigating factor. Having presided over Long's trial, the court was well acquainted with the facts surrounding the crimes. The court was also aware of Long's extensive juvenile record. On the state of this record, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably in imposing the sentences.

{¶60} Finally, we note that in his separate appeal, Long's co-defendant Whipple assigned as error the imposition of multiple punishments by the trial court. *See State v. Whipple*, 1st Dist. No. C-110184, 2012-Ohio-2938. Whipple argued that felonious assault and discharging a firearm into a habitation are allied offenses of similar import. We rejected that argument. *Id.*

{¶61} But Long's experienced appellate counsel has not raised this matter for review in this appeal. And we will not review the matter of our own volition. *See* App.R. 12(A)(1)(b) and 16(A).

{¶62} After our review of Long's sentences for these offenses, we conclude that the fourth and fifth assignments of error are meritless, and we overrule them.

{¶63} Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, J.**, concurs.
**FISCHER, J.**, concurring separately.

**FISCHER, J.**, concurring separately.

{¶64} In his direct appeal from the same trial, Long's co-defendant Fonta Whipple argued that the trial court erred under R.C. 2941.25 in convicting him of both improperly discharging a firearm and felonious assault in connection with the Matthews Avenue shooting. *State v. Whipple*, 1st Dist. No. C-110184, 2012-Ohio-2938, ¶ 35. Although, despite Whipple's deplorable conduct, I would have held that his assertion had merit, the majority disagreed. *See id.* at ¶ 47-55 (Fischer, J., concurring in part and dissenting in part). Thus, even if Long had raised the issue of merger in this appeal, I am now bound by the holding in *Whipple.*

Please note:

The court has recorded its own entry on the date of the release of this opinion.