# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100263 and 100264**

# STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

# DANIEL BOWLEG, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-13-572944-B and CR-13-572944-A

**BEFORE:** Keough, P.J., E.A. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** April 3, 2014

[Cite as *State v. Bowleg*, 2014-Ohio-1433.]

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor
Brian M. McDonough
Joseph J. Ricotta
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

**For Daniel Bowleg**

Oscar E. Rodriguez
1220 West 6th Street, Suite 303
Cleveland, Ohio 44113

**For Jackie J. Ray**

Michael J. Goldberg
The Goldberg Law Firm
323 Lakeside Avenue, Suite 450
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} In these consolidated cases, the state of Ohio appeals from the trial court's judgment granting the motion in limine of defendants-appellees Daniel Bowleg and Jackie J. Ray. We reverse and remand.

## I. Background

{¶2} On March 29, 2013, Bowleg and Ray were indicted on one count of kidnapping in violation of R.C. 2905.01(A)(4) and one count of rape in violation of R.C. 2907.02(A)(2). The indictments stemmed from the alleged rape of L.J. on March 31, 1993. As part of the state attorney general's recent sexual assault kit testing initiative, L.J.'s sexual assault collection kit was submitted to the Ohio Bureau of Criminal Identification and Investigation for testing and examination. Bowleg and Ray were identified as matches for the DNA and subsequently indicted. They pleaded not guilty and filed a motion to dismiss the indictment for pre-indictment delay and a motion in limine to exclude L.J.'s medical records.

{¶3} The trial court held a hearing on the motions. The transcript of the hearing and L.J.'s medical records, which were admitted at the hearing, reveal the following. On March 31, 1993, L.J. reported to city of Cleveland police that she had been raped by three males between the hours of 3:30 a.m. and 5:00 a.m. while she was at a friend's house in Cleveland. Emergency Medical Services personnel, accompanied by a Cleveland police officer,

transported L.J. to Fairview Hospital at approximately 7:15 a.m., where she was treated in the emergency room by Dr. David Pelini and registered nurse Lili Torok. Dr. Pelini's notes in the medical records state in pertinent part:

> 45 y/o F brought in stating that she has been raped. She alleges assault by three men. She states there was vaginal penetration and she believe[s] ejaculation by all three assailants. She denies any rectal or oral penetration. She states that they did not use condoms. She denies any injury or other assaults.

{¶4} Dr. Pelini's physical exam of L.J. revealed alcohol on her breath but no marks or bruises on her body; the pelvic exam revealed no signs of trauma. A blood-alcohol test indicated that she had a blood-alcohol content of .145. Vaginal swabs were taken and after laboratory tests were conducted, L.J. was given Rocephin and prescribed Doxycycline (both antibiotics). A pregnancy test was negative.

{¶5} A sexual assault collection kit was also performed on L.J. The nurse's notes from the sexual assault flowsheet state: "Pt. states she was not wearing underwear or pantyhose at the time of the assault. * * * States attacked by 3 people. Denies injury. * * * Pt. talking freely about assault."

{¶6} Prior to discharge, L.J. was counseled about the risks of sexually transmitted diseases, including HIV infection, and advised to seek confidential testing. She was also advised to follow up with her own doctor in three days. L.J. died in 2008; her boyfriend is also now deceased.

{¶7} After the hearing, the trial court granted the motion in limine, holding that L.J.'s medical records were testimonial pursuant to *Crawford v. Washington*, 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and therefore inadmissible at trial. It held a ruling on the motion to dismiss in abeyance pending the state's appeal of its ruling on the motion in limine.

## II. Analysis

{¶8} In its single assignment of error, the state contends that the trial court erred in granting the defendants' motion in limine because L.J.'s statements to medical personnel contained in her medical records are nontestimonial and admissible under Evid.R. 803(4).

{¶9} As an initial matter, we note that the trial court's judgment is a final, appealable order because the trial court treated the motion in limine as a motion to suppress. "If a court treats a motion in limine as a final ruling on the question of admissibility of evidence, the ruling is equivalent to the grant of a motion to suppress and a final appealable order lies." *State v. Holmes*, 8th Dist. Cuyahoga No. 67838, 1995 Ohio App. LEXIS 621, *3 (Feb. 23, 1995), citing *State v. Davidson*, 17 Ohio St.3d 132, 477 N.E.2d 1141 (1985).

{¶10} We apply a de novo standard of review to evidentiary questions raised under the Confrontation Clause. *State v. Babb*, 8th Dist. Cuyahoga No. 86294, 2006-Ohio-2209, ¶ 17.

{¶11} The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The United States Supreme Court has interpreted this to mean that the admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*. 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Accordingly, the issue is whether L.J.'s statements contained in her medical records were testimonial in nature and therefore inadmissible pursuant to the Sixth Amendment, or whether they were nontestimonial and admissible against Bowleg and Ray.

{¶12} *Crawford* did not define "testimonial" but stated generally that the core class of statements implicated by the Confrontation Clause includes statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52.

{¶13} In *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, the Ohio Supreme Court considered whether hearsay statements by an adult rape victim to a nurse working in a specialized medical facility for sexual assault victims were admissible when the victim was not available to

testify at trial. The court adopted the objective-witness test outlined in *Crawford* for out-of-court statements made to non-law-enforcement personnel, and concluded that in determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant when making the statement. *Id.* at paragraph two of the syllabus. Applying the objective-witness test, the court found that the victim's statements were made to a medical professional at a medical facility for the primary purpose of receiving medical treatment and not investigating past events related to criminal prosecution. *Id.* at ¶ 25. The court held that the statements made by the rape victim to the nurse were nontestimonial because the victim "could have reasonably believed that although the examination conducted at the [sexual assault] unit would result in scientific evidence being extracted for prosecution purposes, the statement would be used primarily for health-care purposes." *Id.* at ¶ 47.

{¶14} In *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, the Ohio Supreme Court held that the statements of a child victim of sexual assault made to doctors and counselors about how her father had sexually abused her were not testimonial and were admissible because they had been made to medical personnel in the course of medical diagnosis and treatment. The court held that "[s]tatements made to medical personnel

for purposes of diagnosis or treatment are not inadmissible under *Crawford*, because they are not even remotely related to the evils that the *Confrontation Clause* was designed to avoid." *Id.* at ¶ 63. The court also noted that "[t]he fact that the information gathered by the medical personnel in this case was subsequently used by the state does not change the fact that the statements were not made for the state's use." *Id.* at ¶ 62. *See also State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 41 ("Statements made for medical diagnosis and treatment are nontestimonial.").

{¶15} In this case, the state contends that L.J.'s statements were made while she was seeking medical treatment and, therefore, were nontestimonial and admissible under Evid.R. 803(4), the medical records exception to the hearsay rule. Bowleg and Ray, on the other hand, contend that L.J.'s statements were testimonial because she was at the emergency room solely for the purpose of collecting evidence to support a sexual assault investigation. They argue that because L.J. denied any injury, she must have believed that she did not need medical attention and, therefore, went to the emergency room only to provide evidence that could be used in a future prosecution. They argue further that her boyfriend and a Cleveland police officer were in the room when the interview was conducted, so any statements by L.J. were made to facilitate the investigation.

{¶16}   We conclude that L.J.'s statements were made for the purpose of medical diagnosis and treatment.   First, prior to any treatment, she signed a consent form giving her consent for medical treatment:

> Permission is hereby given to the emergency physical, attending and/or consulting physician, the authorities of Fairview General Hospital and/or any house officer to perform such an operation, diagnostic or therapeutic procedure or examination (including the administration of an anesthetic) as in his/her or their judgment is deemed advisable.   I also authorize release of information for insurance purposes.

{¶17} Notably absent is any authorization for her statements to be used in a future prosecution.

{¶18}   Furthermore, despite Bowleg and Ray's argument to the contrary, neither L.J.'s boyfriend nor law enforcement personnel were present when she was examined.   The nurse's notes indicate that at 7:30 a.m., L.J. "spoke briefly" with the Cleveland police officer who accompanied her to the hospital.   They also indicate that her boyfriend came into the examination room at approximately 8 a.m. to visit and was escorted out at 8:25 a.m. before the examination began.

{¶19}   And finally, L.J.'s denial of any obvious physical injury is not dispositive of her need for medical treatment.   As the Third District stated in *State v. Wallace*, 3d Dist. Union No. 14-10-20, 2011-Ohio-1728, ¶ 18:

> A victim's statement that she had been raped is relevant for medical diagnosis and treatment because it directs medical providers to examine the genital areas for physical injury,

administer a pregnancy test, and prescribe medications for the prevention of sexually transmitted diseases * * *. A patient's statements concerning how the alleged rape occurred can be relevant to show the "general cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). For example, the victim's statements may guide medical personnel to the particular area(s) of the victim's body to be examined for injury, as well as indicate which areas may need more immediate treatment than others. *State v. Menton*, 7th Dist. No. 07 MA 70, 2009-Ohio-4640, ¶ 51 ("* * * the description of how the [sexual] assault took place, over how long of a period, how many times a person was hit, choked or penetrated, and what types of objects were inserted are all specifically relevant to medical treatment. They are part of the medical history. They are the reason for the symptoms. They let the examiner know where to examine and what types of injuries could be latent.")

{¶20} Here, the statements made by L.J. to Dr. Pelini and nurse Torok are not testimonial, because an objective witness under the same circumstances would not have reasonably believed that her statements would be used later for trial. The records indicate that prior to going to the emergency room, L.J. told the police that she had been raped by three men. A reasonable person in L.J.'s place would have believed that her answers to any investigatory questions asked by the police in response to her report would be used at trial. *State v. Lee*, 9th Dist. Summit No. 22262, 2005-Ohio-996, ¶ 8. However, L.J. would have had no reason to believe that

her same statements about the alleged rape, when subsequently made to the medical personnel at the hospital emergency room, would be used for anything other than medical treatment. *Id.* Furthermore, L.J. could have reasonably believed that although one purpose of the examination in the emergency room was to collect physical evidence for prosecution purposes, her statements would be used primarily for health-care purposes. *Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at ¶ 47.

{¶21} Because L.J.'s statements contained in the medical records are not testimonial, they are admissible under Evid.R. 803(4), which provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Accordingly, the trial court erred in granting Bowleg and Ray's motion in limine to suppress the medical records. The assignment of error is sustained.

{¶22} Reversed and remanded.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
TIM McCORMACK, J., CONCUR

[Cite as *State v. Bowleg*, 2014-Ohio-1433.]