[Cite as *State v. Wright*, 2019-Ohio-4460.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,              :

    v.                                            :

JOSEPH WRIGHT,                            :

    Defendant-Appellant.          :

No. 108026

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 31, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-624971-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Mary Weston and Melissa Riley, Assistant Prosecuting Attorneys, *for appellee.*

David L. Doughten Co., L.P.A., and David L. Doughten, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Joseph Wright, appeals from his conviction following a jury trial. He raises the following assignments of error for review:

1. It is improper to join separate charges when the issues and facts are not separate and distinct. In such case, the jury is likely to confuse

which evidence relates to which charge, it is prejudicial error to join the cases.

2. The introduction of the complainant's hearsay statements regarding an alleged kidnapping and sexual assault violated the appellant's right to confrontation.

3. The trial court erred by permitting witnesses to provide prejudicially irrelevant testimony which allowed the jury to base its verdict on matters other than evidence of the actual offense charged.

4. The prosecutor's improper argument in the state's closing summation deprived the appellant of his right to a fair trial.

5. The state failed to establish that Cuyahoga County had venue to charge the appellant with the underlying offense.

{¶ 2}  After careful review of the record and relevant case law, we affirm Wright's conviction.

## I.  Procedural and Factual History

{¶ 3}  In January 2018, Wright was named in a four-count indictment, charging him with rape in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification; gross sexual imposition in violation of R.C. 2907.05(A)(1); kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification and a sexually violent predator specification; and unlawful sexual conduct with a minor in violation of R.C. 2907.04(A).  The rape, gross sexual imposition, and kidnapping offenses stemmed from allegations that Wright sexually assaulted victim, S.S. (d.o.b. July 25, 1974), in January 1998.  The unlawful sexual conduct with a minor offense stemmed from an allegation that Wright engaged in sexual conduct with then 15-year old victim, M.S. (d.o.b. Aug. 15, 1989), in April 2005.

{¶ 4} In July 2018, Wright filed a motion to sever counts in the indictment pursuant to Crim.R. 14. Wright asserted that he would be substantially prejudiced if all four counts of his indictment were tried together. In his motion to sever, Wright argued, in relevant part:

> Under no circumstances should Mr. Wright's two cases be joined in a single trial. To do so would unfairly prejudice the defense's right to a fair trial by allowing the State to make an end run around the ban against "other acts" evidence and inviting the jury to draw the forbidden inference that Mr. Wright must be guilty of one crime because he is charged with another, and vice versa.

Following a hearing, the trial court denied Wright's motion to sever. The matter proceeded to a jury trial, where the following relevant evidence was adduced.

### Victim S.S.

{¶ 5} In January 1998, S.S. was walking alone to a convenience store when she was grabbed from behind and put into the backseat of a vehicle. A hat was placed over S.S.'s head, preventing her from seeing the individual who moved her inside the vehicle. Once inside the vehicle, S.S. heard several male voices. She testified that the men had "Caribbean" accents. After driving for approximately 20 or 25 minutes, S.S. was removed from the vehicle and was pushed inside a house. S.S. was taken into a room where her clothes were removed and one of the men put his penis inside her vagina. The hat was not covering S.S.'s face during the incident. However, S.S. testified that she could not see anyone because the room was "pitch dark." S.S. stated that she was crying during the incident and was too scared to fight back. She expressed that she believed the male ejaculated because she felt something wet on her vagina.

**{¶ 6}** When the first incident concluded, S.S. was forced to have vaginal intercourse a second and third time. S.S. could not state whether the same person committed each assault. After some time, a hat was placed back over S.S.'s head and she was put back inside a vehicle. S.S. testified that she was dropped off in an unfamiliar neighborhood. When S.S. eventually made her way home, she contacted her friend and told her what had occurred. S.S. was subsequently taken to the hospital, where she spoke with the police and a rape kit was collected.

**{¶ 7}** Cristina Vomero testified that in January 1998, she was working as a nurse in the emergency room at University Hospitals. Nurse Vomero testified that she performed the rape-kit examination on S.S. and took a narrative report as part of her examination. S.S.'s narrative stated, in relevant part:

> This is a 24-year old female who states that when she was on East 31st and Payne walking to the store [at] approximately 7 p.m. last night was raped by three unknown Jamaican men that were in a black car.

**{¶ 8}** Officer Raymond Chipgus of the Cleveland police department testified that he was working as a patrol officer in January 1998, when he responded to University Hospitals to speak with S.S. about the alleged incident. Upon arrival, Officer Chipgus spoke with S.S. and photographed her injuries. Officer Chipgus then took custody of S.S.'s sealed rape kit and transported the evidence to the police department's secured property room.

**{¶ 9}** S.S.'s rape kit was submitted to the Ohio Bureau of Criminal Investigation ("BCI") in 2013. Upon obtaining a DNA standard from Wright, subsequent Y-STR forensic testing was completed in 2017. The results of this testing

identified Wright as a contributor to the male DNA profile found in S.S.'s "vaginal samples, swab of the comb from the pubic hair combing, and a genital swabbing."

{¶ 10} Sonya Dziuba, who is an investigator for Cuyahoga County Prosecutor's Sexual Assault Unit, testified that she was assigned to investigate S.S.'s case. Investigator Dziuba testified that DNA testing performed on S.S.'s rape kit produced investigative leads that identified Wright as a suspect. In the course of her "reinvestigation," Investigator Dziuba interviewed S.S., traveled to the area where the incident allegedly occurred, and created a photo array that contained a photograph of Wright. When S.S. was presented with the photo array by a blind administrator, she circled the photograph of an individual who was not Wright.

### Victim M.S.

{¶ 11} Jennifer Gerhardt testified that in April 2005, she and M.S. went for a walk together in an effort to "find some marijuana." At some point, Gerhardt and M.S. were approached by a black male, later identified as then 36-year old Wright. Gerhardt testified that she and M.S. had never met Wright before. After some discussion, Gerhardt and M.S. agreed to follow Wright to an apartment that was owned by Jimmie McArthur. Gerhardt and M.S. were in the apartment for a brief period of time when M.S. and Wright suddenly left the apartment together. Gerhardt testified that M.S. never returned to McArthur's apartment that evening.

{¶ 12} Jimmie McArthur testified that in April 2005, he was living in an apartment located in Lakewood, Ohio. Regarding the night in question, McArthur recalled Wright arriving at his apartment with "two young ladies" that he had never

met before.  McArthur described the females as too young to entertain and stated that they were "a little too young for [his] taste."  According to McArthur, Wright and one of the females left his apartment to purchase alcohol and marijuana.  When he realized that Wright was not returning, McArthur politely asked the remaining female to leave his apartment.  McArthur testified that he did not observe any sexual interaction between Wright and either of the two females. McArthur was subsequently contacted by police officials about that evening.  He identified Wright in a photo array as the man who came to his apartment with two females.

{¶ 13}  Helen Molly testified that in April 2005, she was employed as a registered nurse at Lutheran Hospital when M.S. arrived at the hospital and alleged that she was sexually assaulted by an unknown male at 12:05 a.m.  Nurse Molly testified that she performed the rape-kit examination on M.S. and took a narrative report as part of her examination.  Nurse Molly testified that upon completing M.S.'s rape-kit examination, she collected the clothing M.S. was wearing and released the evidence to law enforcement officials.  Regarding the narrative history obtained from M.S., Nurse Molly testified that the information is gathered from the patient so that the medical professionals are "able to get in their own words exactly what happened at that time that they remember."  M.S.'s medical records, marked state's exhibit No. 40, reflect that M.S. provided the following narrative to Nurse Molly:

> Patient stated that she went into Lakewood with friend Jennifer.  They met up with a boy she didn't know.  They went to his friend's apartment.  They left the friend's apartment and went to railroad tracks.  Then returned to friend's apartment.  Patient and male left again, returned to railroad tracks.  Male left her.  Patient thought she was alone.  Male

then came from behind, grabbed her. They went to apartment of unknown person and patient was sexually assaulted there. Taken to apartment against her will.

The report further states that M.S. appeared "disheveled," and "was able to verbalize what happened — flat affect."

{¶ 14} Retired Lakewood police detective, Kenneth Kulczycki, testified that in April 2005, he was assigned to investigate allegations of a "possible sexual assault" against M.S. after she was taken to Lutheran Hospital by her mother. Det. Kulczycki testified that he met with M.S. and her mother, and learned "all pertinent information about what happened that led up to the assault or the crime." Upon obtaining a written statement from M.S., Det. Kulczycki then collected M.S.'s rape kit and clothing from the hospital and delivered the evidence to the Lakewood police department's storage room.

{¶ 15} Det. Kulczycki testified that in the course of his investigation, he went to a convenience store in an effort to find video footage of M.S. and the alleged perpetrator together. Relevant to this appeal, the following exchange occurred on the record:

> PROSECUTOR: Did you attempt to find any video footage or anything of that nature?
>
> DET. KULCZYCKI: Oh, I did. I did go to a convenience store where [M.S.] and I think the gentleman, the person went to and it wasn't available at that time.
> PROSECUTOR: Now, why did you go search for video footage?
>
> DET. KULCZYCKI: I believe they went there for alcohol or something like that.

PROSECUTOR: Okay. So in other words, did you go look for video footage based on something you learned from [M.S.] when she told you what had happened to her?

DET. KULCZYCKI: Yes.

PROSECUTOR: What is it she told you had happened to her that caused you to do these things investigatively?

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

DET. KULCZYCKI: She said she was raped by this party she went to the store with.

PROSECUTOR: Can you tell us more?

DET. KULCZYCKI: Yes. They went to the store for alcohol and maybe for drugs also and on the way back walking after the store walking back along the tracks to the apartment —

DEFENSE COUNSEL: Continuing objection.

THE COURT: Overruled.

DET. KULCZYCKI: — the suspect went missing for a short time, very short time. And then the suspect came up from behind and grabbed her and forced her into a car and took her to another apartment where he tied her up and had sex with her, raped her.

PROSECUTOR: And when you're saying the perpetrator, you're talking the person she only knew as Joe?

DET. KULCZYCKI: Yes.

PROSECUTOR: And so she told you he forced her into a car, correct?

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

PROSECUTOR: Then you said took her to a separate apartment, what do you mean separate?

DEFENSE COUNEL: Continuing objection.

THE COURT: Overruled.

DET. KULCZYCKI: Not back to the original apartment, some other apartment that she didn't know where it was.

PROSECUTOR: Oh, okay. And so based on this report that [M.S.] made to you —

DET. KULCZYCKI: Yes.

PROSECUTOR: — how did that relate to what you do in terms of looking for video footage?

DET. KULCZYCKI: Well, we tried to identify the suspect if there was a picture of him because all we knew was by the name Joe.

{¶ 16} Lieutenant Kevin Kaucheck of the Lakewood police department testified that he was assigned to conduct the follow-up investigation on M.S.'s case. In the course of his investigation, Lt. Kaucheck interviewed M.S., her mother, her sister, Gerhardt, and McArthur. Lt. Kaucheck stated that he confronted M.S. about perceived inconsistencies between her story and the statements provided by other witnesses. When M.S. stopped cooperating with the police investigation, Lt. Kaucheck was unable to develop further leads and the case was closed.

{¶ 17} Investigator Dziuba was also assigned to investigate M.S.'s cold case. Investigator Dziuba testified that she spoke with M.S. on the phone. M.S., who was living outside the state of Ohio, expressed that she did not wish to talk about the incident or participate in the investigation. Investigator Dziuba explained that, in

her experience, it is not surprising when a sexual assault victim declines to speak about the incident. However, because M.S. did not wish to cooperate with the investigation, Investigator Dziuba was required to obtain a search warrant to gain access to M.S.'s relevant medical records. Investigator Dziuba also interviewed Gerhardt, McArthur, and Wright. During her interview with Wright, Investigator Dziuba collected a DNA standard that was used to conduct further DNA testing. The authenticity of M.S.'s DNA report and the conclusions reached therein were stipulated to by Wright. The DNA report reflects that Wright was included as a major contributor in the DNA profile obtained from M.S.'s vaginal sample.

{¶ 18} At the conclusion of trial, the jury returned a verdict of guilty as to the unlawful sexual conduct with a minor offense committed against M.S. Wright was found not guilty of all counts pertaining to S.S. In November 2018, the trial court sentenced Wright to two years in prison.

{¶ 19} Wright now appeals from his conviction.

## II. Law and Analysis

### A. Joinder

{¶ 20} In his first assignment of error, Wright argues "the state improperly joined two allegations of sexual impropriety against Wright involving two separate alleged victims." Wright contends the evidence against him was not "simple and direct," and therefore, he was prejudiced by the joinder of multiple offenses.

{¶ 21} Under Crim.R. 8(A), which governs the joinder of offenses, two or more offenses may be charged together if the offenses "are of the same or similar

character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶ 22} The law favors joining multiple offenses in a single trial if the requirements of Crim.R. 8(A) are satisfied. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38. If it appears, however, that the defendant would be prejudiced by the joinder, a trial court may grant a severance. Crim.R. 14; *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 95. The defendant bears the burden of proving prejudice and that the trial court abused its discretion in denying severance. *Diar* at *id.*

{¶ 23} The state can refute a defendant's claim of prejudice by joinder of multiple offenses in two ways (1) a showing that the evidence of each crime is simple and direct or (2) evidence of the other crimes would be admissible even if the counts were severed. *State v. Anderson*, 2017-Ohio-931, 86 N.E.3d 870, ¶ 25 (8th Dist.), citing *Lott* at 163. When the evidence is "simple and direct," an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of the crimes as other acts under Evid.R. 404(B). *Lott* at *id.* Thus, if the state can meet the requirements of the "joinder test," it need not meet the requirements of the stricter "other acts test." *State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, ¶ 66, citing *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

{¶ 24} "Simple and direct" evidence means that the evidence of each crime is "so clearly separate and distinct as to prevent the jury from considering evidence of [some crimes] as corroborative of the other." *State v. Belle*, 8th Dist. Cuyahoga Nos. 107046 and 107300, 2019-Ohio-787, ¶ 25, citing *State v. Quinones*, 11th Dist. Lake No. 2003-L-015, 2005-Ohio-6576, ¶ 48. Evidence is "simple and direct" if the trier of fact is capable of segregating the proof required for each offense. *Belle* at *id.*, citing *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 39 (10th Dist.).

{¶ 25} The object of the "simple and direct" test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other. *State v. Echols*, 128 Ohio App.3d 677, 694, 716 N.E.2d 728 (1st Dist.1998). "The very essence of the rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it." *Id.* Thus, as this court has stated, "Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof." *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 16, citing *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33.

{¶ 26} After careful consideration, we find nothing in the record to suggest that a prejudicial joinder occurred. The charges brought against Wright stemmed from separate incidents relating to different victims. Although the offenses committed against each victim were sexual in nature, the incidents occurred several years apart and involved unrelated facts and circumstances. Each case was entirely

distinct in proof, involving evidence of separate medical records, separate forensic analysis, and independent police investigation. We recognize that each case was reviewed by the same cold-case investigator, who explained to the jury the actions she took after Wright was identified as a possible suspect in each case. However, viewing Investigator Dziuba's testimony in its entirety, we cannot say her involvement in each case led to confusion, as Wright suggests. Investigator Dziuba was questioned separately about her role in each case without significant overlap.

{¶ 27} Accordingly, we find the record supports the trial court's determination that the evidence pertaining to each victim and each offense was simple and direct. Contrary to Wright's position, there is no indication that evidence pertaining to each victim's claims was confused or improperly used to corroborate each of the separate allegations. In fact, the record establishes that the jury was sufficiently able to segregate the evidence regarding each victim, as evidenced by their finding of not guilty on Counts 1, 2, and 3. *See State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, ¶ 19 (the evidence was "simple and direct" as reflected by the jury acquitting the defendant of offenses relating to one of the several shootings); *State v. Bonneau*, 8th Dist. Cuyahoga No. 97565, 2012-Ohio-3258, ¶ 22 (the jury's not guilty verdict as to the counts relating to one victim and its guilty verdicts as to the counts relating to another demonstrated that the jury was able to separate the evidence and considered each victim separately); *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 95 (8th Dist.) (defendant could not show prejudice from joinder as he was acquitted of one charge); and *State v. Banks,* 2015-

Ohio-5413, 56 N.E.3d 289, ¶ 66-68 (8th Dist.) (defendant was unable to show prejudice for the court's refusal to sever his offenses because he was acquitted of some charges).

{¶ 28} Wright's first assignment of error is overruled.

### B. Hearsay

{¶ 29} In his second assignment of error, Wright argues the introduction of M.S.'s hearsay statements regarding an alleged kidnapping and sexual assault violated his right to confrontation. Wright contends that because M.S. did not testify at trial, he had no opportunity to confront her testimonial accusations.

{¶ 30} A trial court has broad discretion regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay. *Solon v. Woods*, 8th Dist. Cuyahoga No. 100916, 2014-Ohio-5425, ¶ 10. We therefore will not disturb a trial court's decision regarding the admissibility of hearsay evidence absent an abuse of discretion. *Id.*, citing *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

{¶ 31} The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." *See State v. Issa*, 93 Ohio St.3d 49, 752 N.E.2d 904 (2001). Further, Article I, Section 10, of the Ohio Constitution provides that "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *." *Id.*

{¶ 32} The Confrontation Clause prohibits the admission of an out-of-court statement of a witness who does not appear at trial if the statement is testimonial, unless the defendant has had an opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). "Testimonial" statements generally include hearsay statements "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* at 52, quoting the amicus brief of the National Association of Criminal Defense Lawyers. In determining whether a statement is testimonial for purposes of the Confrontation Clause, "'courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations.'" *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 21, quoting *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of the syllabus.

{¶ 33} In attempting to determine whether a statement is testimonial, the United States Supreme Court has employed the "primary purpose" test, from which it seeks to quantify the primary objective of the questioning:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

{¶ 34} The Supreme Court has further explained that in making a "primary purpose" determination, the courts must consider all relevant circumstances, and "'[w]here no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Ohio v. Clark*, 576 U.S. ___, 135 S.Ct. 2173, 2176, 192 L.Ed.2d 306 (2015), quoting *Michigan v. Bryant*, 562 U.S. 344, 359, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011).

{¶ 35} Hearsay is an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C). Hearsay is inadmissible unless it falls within a specific exception outlined in the rules of evidence. Evid.R. 802. The Confrontation Clause does not bar the admission of hearsay statements that are not testimonial. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 21. Indeed, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated and need not be considered. *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.E.2d 1 (2007).

{¶ 36} On appeal, Wright challenges certain testimony provided by Nurse Molly and Det. Kulczycki regarding the initial characterization of the conduct between Wright and M.S. as a rape and/or sexual assault. We separately address the nature of the testimony provided by each witness.

**Testimony of Nurse Molly**

{¶ 37} In this case, Nurse Molly proffered extensive testimony regarding M.S.'s medical records and her role in collecting M.S.'s rape kit. During her

testimony, Nurse Molly recited the narrative she received from M.S. during the medical examination. In relevant part, Nurse Molly testified that M.S. reported being sexually assaulted by a man she met while walking with her friend. In challenging this statement, Wright contends that M.S.'s description of the incident was unrelated to her medical treatment and was "unequivocally provided for investigative purposes."

{¶ 38} "This court has repeatedly held that statements elicited during questioning by medical personnel for the purposes of medical diagnoses and treatment are not testimonial, and therefore, are not barred by the Confrontation Clause." *State v. Diaz*, 8th Dist. Cuyahoga No. 103878, 2016-Ohio-5523, ¶ 32, citing *Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138; *Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415; *State v. Bowleg*, 8th Dist. Cuyahoga Nos. 100263 and 100264, 2014-Ohio-1433.

{¶ 39} Similarly, "[s]tatements made for the purposes of medical diagnosis and treatment are a clearly defined, long-standing exception to the rules of hearsay." *Echols* at ¶ 27. Evid.R. 803(4) allows for the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." "'[C]ourts have consistently found that a description of the encounter and identification of the perpetrator are within [the] scope of statements for medical treatment and diagnosis.'" *Id.*, quoting *In re D.L.*, 8th Dist. Cuyahoga No. 84643,

2005-Ohio-2320, ¶ 21, citing *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137, at ¶ 15.

{¶ 40} As this court has explained:

> A victim's statement that she had been raped is relevant for medical diagnosis and treatment because it directs medical providers to examine the genital areas for physical injury, administer a pregnancy test, and prescribe medications for the prevention of sexually transmitted diseases * * *. A patient's statements concerning how the alleged rape occurred can be relevant to show the 'general cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.' Evid.R. 803(4). For example, the victim's statements may guide medical personnel to the particular area(s) of the victim's body to be examined for injury, as well as indicate which areas may need more immediate treatment than others. *State v. Menton*, 7th Dist. [Mahoning] No. 07 MA 70, 2009-Ohio-4640, ¶ 51 ('* * * the description of how the [sexual] assault took place, over how long of a period, how many times a person was hit, choked or penetrated, and what types of objects were inserted are all specifically relevant to medical treatment. They are part of the medical history. They are the reason for the symptoms. They let the examiner know where to examine and what types of injuries could be latent.')

*Bowleg* at ¶ 19, quoting *State v. Wallace*, 3d Dist. Union No. 14-10-20, 2011-Ohio-1728, ¶ 18.

{¶ 41} After careful consideration, we find the narrative statement was made by M.S. for the purpose of medical diagnosis and treatment. The statements were made to medical personnel during an emergency medical examination and were relevant to the type of treatment M.S. would receive. In this case, the nature of M.S.'s history caused the medical personnel to perform a rape kit, complete an internal speculum examination, test for sexually transmitted diseases, and administer a pregnancy test and the morning after pill. Under these circumstances,

we find the out-of-court statements made to Nurse Molly were not elicited as part of a police investigation or in anticipation of prosecution. Rather, the narrative statements were made primarily for the purpose of medical diagnosis and treatment. The statements are therefore admissible under the hearsay exception outlined in Evid.R. 803(4) and do not violate the Confrontation Clause.

**Testimony of Det. Kulczycki**

{¶ 42} In this case, Det. Kulczycki testified that he attempted to recover video footage from a convenience store after M.S. informed him that "she was raped by [the] party she went to the store with." When asked to elaborate, Det. Kulczycki stated:

> They went to the store for alcohol and maybe for drugs also and on the way back walking after the store walking back along the tracks to the apartment * * * the suspect went missing for a short time, very short time. And then the suspect came up from behind and grabbed her and forced her into a car and took her to another apartment where he tied her up and had sex with her, raped her.

{¶ 43} On appeal, Wright contends that Det. Kulczycki's testimony was unfairly prejudicial and unquestionably testimonial. He asserts that the foregoing statements were provided for the "primary purpose of creating an out-of-court substitute for trial testimony."

{¶ 44} "Law-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 172. However, the testimony must satisfy three criteria to be properly admitted as nonhearsay: "(1) the conduct to be explained is relevant, equivocal, and contemporaneous with the

statements, (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) the statements do not connect the accused with the crime charged." *Id.*, citing *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

{¶ 45} Applying this framework, we find the challenged portion of the detective's testimony was admissible nonhearsay explaining why Det. Kulczycki went to the convenience store in an effort to capture Wright and M.S. together on surveillance-video footage. At the time Det. Kulczycki went to the convenience store, the police did not know the identity of the alleged perpetrator. Thus, Det. Kulczycki's testimony served to explain why the investigation moved in a certain direction, not to affirmatively prove Wright's guilt. In addition, we are unable to conclude that the detective's testimony was unfairly prejudicial. As discussed below, the challenged testimony constituted relevant evidence, which properly provided the trier of fact with information required to understand the nature and context of the police investigation. Under these circumstances, we find Det. Kulczycki's statement satisfied the *Ricks* criteria.

{¶ 46} Moreover, even if this court were to find Det. Kulczycki's testimony exceeded the information necessary to explain the basis of his investigation, any error was harmless beyond a reasonable doubt. Whether a Confrontation Clause violation is harmless beyond a reasonable doubt involves not merely an inquiry into the sufficiency of the remaining evidence, absent the erroneously admitted evidence, but whether there is a reasonable possibility that the violating evidence might have

contributed to the resulting conviction. *Ricks* at ¶ 46, citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Based on the record before us, we find no reasonable possibility that the challenged testimony of Det. Kulczyski contributed to Wright's unlawful sexual conduct with a minor conviction. Det. Kulczycki's testimony regarding the nature of the crime he was investigating was cumulative to other evidence properly admitted during trial.

{¶ 47} Based on the foregoing, we find Wright's Sixth Amendment rights were not violated by Nurse Molly's or Det. Kulczycki's testimony. Accordingly, the trial court did not err by allowing the testimony into evidence. Wright's second assignment of error is overruled.

## C. Relevant Testimony

{¶ 48} In his third assignment of error, Wright argues the trial court erred by permitting witnesses to provide prejudicially irrelevant testimony that allowed the jury to base its verdict on matters other than evidence of the actual offense charged.

{¶ 49} To be relevant and therefore admissible, evidence must have a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. *See also Oakwood v. Makar*, 11 Ohio App.3d 46, 50, 463 N.E.2d 61 (8th Dist.1983). Even if the evidence is relevant, it must be excluded under Evid.R. 403(A) "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

However, despite the mandatory terms of Evid.R. 403(A), the appropriate standard of review is the abuse of discretion standard. The Supreme Court of Ohio has interpreted Evid.R. 403(A) to mean that "'[t]he trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.'" *Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984), quoting *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶ 50} In reaching a decision involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect. *Id.* at paragraph seven of the syllabus. In order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great. *State v. Morales*, 32 Ohio St.3d 252, 258, 513 N.E.2d 267 (1987). Furthermore, relevant evidence that is challenged as having probative value that is substantially outweighed by its prejudicial effects "should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect" to the party opposing its admission. *Maurer* at 265.

{¶ 51} Although evidence may be damaging or harmful to the defendant, that does not necessarily mean that the evidence is prejudicial under the rules of evidence. Inherently, all evidence introduced against a criminal defendant is prejudicial. Unfairly prejudicial evidence, though, tends to appeal to a jury's emotional sympathies rather than intellect. *Oberlin v. Akron Gen. Med. Ctr.*, 91

Ohio St.3d 169, 172, 2001-Ohio-248, 743 N.E.2d 890, quoting *Weissenberger's Ohio Evidence* (2000) 85-87, Section 403.3.

{¶ 52} Wright was charged with unlawful sexual conduct with a minor, which required the state to prove beyond a reasonable doubt that Wright engaged in sexual conduct with another, who is not the spouse of the offender, "when the offender knows the other person is 13 years of age or older but less than 16 years of age, or the offender is reckless in that regard." R.C. 2907.04(A). As previously discussed, the state presented testimony from medical personnel and law enforcement officials who expressed that M.S. had reported being raped. Nurse Molly was questioned at length about M.S.'s rape-kit examination and her narrative report, wherein M.S. indicated that she had been "sexually assaulted." Similarly, Det. Kulczycki provided testimony regarding the nature of M.S.'s initial allegations to the police in an effort to explain the steps he took in the course of his investigation.

{¶ 53} On appeal, Wright argues that the repeated references to M.S.'s allegations of rape were unfairly prejudicial. Wright notes that he was not charged with rape, and that the only issue before the jury is whether he "had been reckless in having sex with M.S. as he knew or should have known she was under the age of 16." Thus, Wright contends that "the prejudice of the admissions is obvious, if a defendant rapes a woman, he is probably reckless in that regard, as a rapist would likely not care about the age of his victim." Wright suggests that the state's use of the rape allegations was intended to arouse the jury's emotions and "tempt the jury to decide the case on an improper basis."

{¶ 54} After careful consideration, we find no abuse of discretion and are unable to conclude that the trial court abused its discretion by permitting the state to introduce evidence contained in M.S.'s medical records and the information gathered and considered by law enforcement officials during their investigation into the allegations levied by M.S. We recognize that Wright stipulated to the results of M.S.'s DNA report and conceded that he engaged in sexual conduct with M.S. Nevertheless, we believe testimony encapsulating the full scope of M.S.'s medical treatment and the extent of the police investigation constituted relevant evidence. Because M.S. declined to participate in the prosecution, the challenged testimony provided the jury with context regarding M.S.'s medical treatment, the efforts taken by the police to discover the perpetrator's identity, and nature of Wright's interaction with M.S. on the night in question. While this testimony contained facts that were unfavorable to Wright's defense, we find the foregoing evidence, including brief references to allegations of sexual assault, was probative to the jury's determination of whether Wright committed the offense of unlawful sexual conduct with a minor.

{¶ 55} Wright's third assignment of error is overruled.

### D. Prosecutorial Misconduct

{¶ 56} In his fourth assignment of error, Wright argues the state committed prosecutorial misconduct during its closing argument.

{¶ 57} In reviewing a claim of prosecutorial misconduct, we must determine whether the comments and questions by the prosecution were improper and, if so,

whether they prejudiced Wright's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984). An appellate court should only reverse a conviction if the effect of the misconduct "'permeates the entire atmosphere of the trial.'" *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, ¶ 99, quoting *State v. Tumbleson*, 105 Ohio App.3d 693, 699, 664 N.E.2d 1318 (12th Dist.1995). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 58} Generally, a prosecutor is entitled to wide latitude during closing argument. *State v. Harris*, 2017-Ohio-2751, 90 N.E.3d 342, ¶ 84 (8th Dist.), citing *Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). And the closing argument must be viewed in its entirety to determine whether the disputed remarks were prejudicial. "[I]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Gapen* at ¶ 106, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). In determining whether a prosecutor's comment was prejudicial, we consider several factors: (1) the nature of the remark(s), (2) whether an objection was made by counsel, (3) whether the court gave curative instructions, and (4) the general strength of the evidence against the defendant. *Harris* at ¶ 84, citing *State v. Braxton*, 102 Ohio App.3d 28, 41, 656 N.E.2d 970 (8th Dist.1995).

{¶ 59} In this case, Wright argues the prosecutor improperly characterized the conduct committed against M.S. as rape, when he was not charged with a rape offense. Wright also contends the prosecutor mischaracterized the definition of recklessness by suggesting that Wright had "*a duty* to determine if [M.S] is old enough to consent to sex." Finally, Wright asserts that the prosecutor improperly denigrated defense counsel by asking the jury to "reject the invitation from defense counsel to focus on victim vulnerability or demand they be perfect."

{¶ 60} Contrary to Wright's arguments on appeal, we are unable to conclude that the challenged remarks were made in the attempt to "play to the jury's sympathies." Initially, we note that the prosecutor's misstatement of the law of recklessness was objected to, and appropriately sustained by the trial court. In addition, the record reflects that the prosecutor's use of the phrase "rape victims" was primarily made in reference to S.S. and in rebuttal of defense counsel's attempt to minimize the veracity of S.S.'s allegations by noting that she was "confrontational" during her cross-examination and "misrepresented her sexual history." Finally, the record does not support Wright's position that the state improperly denigrated defense counsel. Viewing the challenged statements in context, it is evident that the prosecutor was merely responding, in a professional manner, to the arguments raised during defense counsel's closing arguments. Specifically, the prosecutor implored the jury to look past defense counsel's attempt to impeach S.S. and M.S.'s credibility by raising issues of character.

{¶ 61} Viewing the closing arguments in their entirety, we find the state did not commit misconduct such that Wright was deprived of a fair trial. Wright's fourth assignment of error is overruled.

### E. Venue

{¶ 62} In his fifth assignment of error, Wright argues the state failed to establish that Cuyahoga County, Ohio had venue to charge him with the underlying offense.

{¶ 63} Venue refers to the proper place in which to try a criminal matter. Under Article I, Section 10 of the Ohio Constitution and R.C. 2901.12, "evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. Venue is not a material element of an offense charged, but it is, nevertheless, a fact the state must prove beyond a reasonable doubt in a criminal prosecution unless it is waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983), citing *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). "'A conviction may not be had in a criminal case where the proof fails to show that the crime alleged in the indictment occurred in the county where the indictment was returned.'" *Hampton* at ¶ 19, quoting *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus.

{¶ 64} On appeal, Wright contends the state "failed to prove beyond a reasonable doubt that [he] had sex with M.S. in Cuyahoga County." While Wright does not dispute that he and M.S. were in Cuyahoga County at the time they met and

walked to Jimmie McArthur's apartment, he maintains the state failed to elicit direct testimony establishing where the subsequent sexual conduct occurred.

{¶ 65} However, venue does not need to be proven in express terms, but rather, can be established by the totality of facts and circumstances of the case. *State v. May*, 8th Dist. Cuyahoga No. 102482, 2015-Ohio-4275, ¶ 22, citing *State v. Chintalapalli*, 88 Ohio St.3d 43, 45, 2000-Ohio-266, 723 N.E.2d 111; *Headley* at 477; *Hampton* at ¶ 19 ("'it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment'"), quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus.  Thus, venue may be established by circumstantial evidence.  *See, e.g.*, *State v. Wheat*, 10th Dist. Franklin No. 05AP-30, 2005-Ohio-6958, ¶ 10, 13 (although no witness testified that offenses at issue occurred in Franklin County, state presented sufficient circumstantial evidence as to the location of the crime to establish venue); *State v. Martin*, 10th Dist. Franklin Nos. 02AP-33 and 02AP-34, 2002-Ohio-4769, ¶ 27-30 (where there was no direct testimony that offense at issue occurred in Franklin County, sufficient circumstantial evidence existed to establish venue based on testimony of responding police officer that he was employed by the city of Columbus, assigned to the Franklinton area and dispatched to a specific address in the area, and video that showed that location of offense was in an urban setting and there was no evidence to suggest that the offense occurred outside Franklin County); *State v. Norton*, 2d

Dist. Greene No. 97 CA 112, 1998 Ohio App. LEXIS 5872, *18-21 (Dec. 11, 1998) (evidence that officers employed by the Greene County Sheriff's Department investigated a burglary committed in Bath Township was sufficient to prove venue in Greene County).

{¶ 66} Upon reviewing the entire record in this case, we find the state presented sufficient circumstantial evidence to establish Cuyahoga County as the proper venue. In this case, McArthur testified that on the night of the incident, he was living in an apartment located in Lakewood, Ohio, when Wright entered his apartment with "two young ladies." After a brief period of time, Wright and M.S. left McArthur's apartment together on foot. Although M.S. did not testify at trial, the record contains evidence demonstrating that she walked with Wright to nearby railroad tracks. After a period of time, Wright then took M.S. to another apartment where the criminal offense occurred. The record further demonstrates that the original investigating officers were employed by city of Lakewood and performed the majority of their investigation near the location of McArthur's apartment in Lakewood, Ohio. When asked whether he determined where the incident occurred, Det. Kulczycki expressed that the police "had an idea it was these apartments behind Drug Mart on Detroit [Avenue]" in Lakewood, Ohio.

{¶ 67} Viewing this evidence collectively, we find it could be reasonably determined beyond a reasonable doubt that the unlawful sexual conduct with a minor offense occurred in Cuyahoga County, Ohio.

{¶ 68} Wright's fifth assignment of error is overruled.

**{¶ 69}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR